UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JILLIAN CARUSO,                                    MEMORANDUM AND ORDER

        Plaintiff,                              CV 05-3294

        -against-                              (Wexler, J.)

MASSAPEQUA UNION FREE SCHOOL
DISTRICT,

        Defendant.
------------------------------------------------------------X

APPEARANCES:

    PAUL L. DASHEFSKY, ESQ.
    317 Middle Country Road
    Smithown, NY 11787
    Attorney for Plaintiff

    MIRANDA SOKOLOFF SAMBURSKY
    SLONE VERVENIOTIS LLP
    BY: STEVEN C. STERN, ESQ.
    240 Mineola Blvd.
    Mineola, NY 11501
    Attorneys for Defendant

WEXLER, District Judge

This is a civil rights employment discrimination case in which Plaintiff Jillian Caruso ("Plaintiff" or "Caruso") alleges that she was constructively discharged from her position as a probationary teacher for the Defendant Massapequa Union Free School District (the "District"). Plaintiff sets forth a federal cause of action pursuant to 42 U.S.C. §1983 ("Section 1983") and a New York State cause of action pursuant to Section 201-d of the New York State Labor Law. The factual basis for each of Plaintiff's claims alleges, essentially, that Caruso suffered a

retaliatory constructive discharge as a result of the exercise of her Constitutionally protected First Amendment right to freedom of speech. Presently before the Court is the District's motion for summary judgment on both claims. Defendant argue that the First Amendment claim fails on the merits. Summary judgment dismissing the state law claim is sought on the additional ground that Plaintiff failed to file the required notice of claim. For the reasons that follow, summary judgment is denied as to the Section 1983 claim but is granted with respect to the state law claim for failure to file a notice of claim.

## BACKGROUND

### I. Plaintiff's Employment At The District And Her Resignation

Plaintiff was employed as an elementary school teacher by the District beginning in September of 2003 and resigned in January of 2005. Plaintiff taught first grade during her first year of employment at the District. During her second year, Caruso was assigned to teach a third grade class. It was during that school year that Plaintiff resigned.

Caruso alleges that the resignation was forced upon her by Ms. Becker-Seddio, the principal of the school where Plaintiff worked. According to Plaintiff, she was told by Becker-Seddio that denial of tenure proceedings would shortly commence and Caruso should resign before those proceedings resulted in her termination.

### II. Facts Preceding Plaintiff's Resignation

Plaintiff's second year of employment with the District coincided with the 2004 Presidential election. It is Plaintiff's political affiliation in general, and her position as to the election in particular, that form the backdrop for Plaintiff's complaint. Caruso states that she is an active member of the Republican party and was, at all relevant times, a supporter of President

George Bush. She alleges that she spoke with her class about her support of the President. She further alleges that her car had bumper stickers supporting the President and that she was known to have spoken on talk radio shows as to that support.

Becker-Seddio, the principal of the school in which Plaintiff taught, is married to Frank Seddio. Mr. Seddio is alleged to be a liberal assemblyman in Brooklyn, New York. Plaintiff states that Principal Becker-Seddio displays a photograph in her office taken with Hillary Clinton.

Plaintiff alleges that during the Fall of 2004, she hung the official White House photograph of George Bush in her classroom. She further alleges that she was forced to remove that photograph and, shortly thereafter, forced to resign from her teaching position.

Not surprisingly, the District's version of the facts varies considerably from those set forth by Plaintiff. According to the District, Plaintiff's posting of the photograph of President Bush coincided with a mock Presidential election being conducted among the third grade classes. The District alleges that Plaintiff was asked to either remove the photograph of George Bush or to balance that photograph with one of John Kerry, the Democratic nominee. This directive was stated to be aimed at allowing for a fair mock election and to avoid giving Caruso's students the impression that they were required to vote for the candidate endorsed by their teacher.

The District further states that Plaintiff was not the exemplary teacher that she claims to have been. According to the District, Plaintiff struggled as a teacher and her evaluations were among the worst of all teachers in the District. The District further argues that no administrator was aware of Plaintiff's political affiliation and even if such knowledge existed, it would not have made a difference to Plaintiff's teaching career.

3

III. Defendant's Motion

Defendant's motion to dismiss the First Amendment claim argues that the Board of Education had neither knowledge nor involvement in the circumstances leading to Plaintiff's resignation and that the District had no knowledge of Plaintiff's political activities. The First Amendment claim is further alleged to fail, as a matter of law, for two additional reasons. First, the hanging of the portrait of the President is characterized by the District as an act designed to further an educational purpose and pursuant to Caruso's duties as a teacher. Consequently, pursuant to Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), it is argued that the hanging of the portrait was an act taken in furtherance of Plaintiff's stated duties and therefore is not protected by the First Amendment. Second, it is argued that the First Amendment claim fails because the District, seeking to avoid the appearance that a teacher favored one candidate in the ongoing mock election, had a legitimate pedagogical interest in asking Plaintiff to take down or balance the picture of the President.

In addition to these arguments, the District seeks dismissal of Plaintiff's state law claim for failure to file a notice of claim. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Legal Principles

    A. Standards For Summary Judgment

A motion for summary judgment is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250 (1986). The party seeking

judgment bears the burden of demonstrating that no issue of fact exists. McLee v. Chrysler Corp. 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 242.

Summary judgment is not defeated by vague assertions of unspecified disputed facts. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Moreover, in the context of a case alleging employment discrimination, conclusory allegations of discrimination are insufficient to defeat summary judgment. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "The salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id. see also Weinstock v. Columbia University, 224 F.3d 33, 41 (2d Cir. 2000). Nonetheless, the Second Circuit has reminded district courts that "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." Graham v. Long Island Railroad, 230 F.3d 34, 38 (2d Cir. 2000).

II. Stating a First Amendment Claim

    A. Standards for Application of Garcetti

When deciding whether a public employee states a First Amendment claim, the court must first consider whether the recent Supreme Court case of Garcetti v. Ceballos, 126 S. Ct.

1951 (2006), bars the claim. Garcetti holds, generally, that statements made pursuant to an employee's official duties are not protected by the First Amendment. Garcetti v. Ceballos, 126 S. Ct. 1951 (2006); Skehan v. Village of Mamaroneck, 465 F.3d 96, 105 (2d Cir. 2006); Benvenisti v. City of New York, 2006 WL 2777274 *7 (S.D.N.Y. September 23, 2006). In such cases, statements are not considered to be made "as a citizen," the Constitution does not interfere with employer discipline, and there is no First Amendment claim. Skehan, 465 F.3d 105.

In Garcetti, the Supreme Court held that plaintiff Ceballos, a deputy district attorney, was properly disciplined based upon statements made in connection with the veracity of a warrant. Such statements were made pursuant to an investigation conducted by Ceballos as part of his official duties. Because the Court determined that Ceballos spoke as an employee, and not as a private citizen, he stated no First Amendment claim. See Garcetti, 126 S. Ct. at 1959-60.

The question of whether an employee speaks pursuant to his official duties is not always easy and Garcetti sets forth no dispositive test. Noting, however, that the test should be "a practical one," the Supreme Court states that "formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." Garcetti, 126 S. Ct. at 1961-62. The controlling factor supporting dismissal of the claim in Garcetti was the fact that the speech was clearly undertaken pursuant to plaintiff's duty to advise his supervisor as to how to proceed with a pending matter. Id. at 1959-60.

Courts in this Circuit have dismissed complaint pursuant to Garcetti where the statements at issue were a safety officer's report on environmental risks, see Ruotolo v. City of New York, 2006 WL 2033662 *2-4 (S.D.N.Y. 2006); and where the speech was a police officer's statement regarding the dismissal of traffic summonses, see Brewster v. City of Poughkeepsie, 434 F.

6

Supp.2d 155, 157 (S.D.N.Y. 2006). Neither these cases nor the facts in Garcetti dictate the result in this case. It is clear, however, that application of Garcetti requires a fact-specific inquiry. Moreover, with respect to application of Garcetti to a school teacher, the court notes that concerns particular to that profession may be implicated. Specifically, in Garcetti, the Supreme Court noted the argument that speech related to "academic scholarship or classroom instruction implicates additional constitutional interests" and stated that it need not decide whether the Garcetti analysis "would apply in the same manner to a case involving speech related to scholarship or teaching." Garcetti, 126 S. Ct. at 1962.

B. Standards If Garcetti Does Not Apply

In cases where an employee is determined to be speaking as a citizen, Garcetti does not bar the claim and the court moves on to consider a second analysis. Specifically, the court considers: (1) whether the speech relates to a matter of public concern; (2) whether the employee suffered adverse employment action and (3) whether the speech was a motivating factor in the employment action taken. Skehan, 465 F.3d at 105-06. As to the first factor, speech on matters of private concern, is not constitutionally protected. Reuland v. Hynes, 460 F.3d 409, 415 (2d Cir. 2006). Whether the speech relates to a matter of public concern is an issue of law for the court. Reuland, 460 F.3d at 414. Speech will be determined to be of public concern if it "relates to any matter of political, social, or other concern to the community." Reuland, 460 F.3d at 415, quoting, Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). The nature of speech is determined by "the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 145-48 (1983). When determining whether particular speech is protected, the speaker's motivation as to whether she speaks of a matter of public

7

concern is not dispositive. Reuland, 460 F.3d at 415. Rather, it is one factor to be considered. Id.

If plaintiff makes all required showings, a defendant may nonetheless prevail if it shows "either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." Skehan, 465 F.3d at 106. As to the second factor, adverse employment action following the exercise of protected speech will not violate the First Amendment "if the employee's interest in free speech is outweighed by the employer's interest in avoiding disruption." Pickering v. Bd. of Educ., 391 U.S. 563 (1968). The employee may nonetheless prevail if it can be shown "that the employer's motivation" was "retaliation for the speech itself, rather than for any resulting disruption." Issues as to whether a defendant is motivated by a desire to avoid disruption in the workplace or retaliation and whether concerns about disruption are reasonable present questions of fact for a jury. See Reuland, 460 F.3d at 419 ("factual issues underlying Pickering balance must be submitted to the jury").

C. Liability of the Board

To prevail against named defendants, a plaintiff must show that each was "personally involved . . . in the alleged constitutional deprivation." Skehan, 465 F.3d at 106, quoting, Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005). Liability of a supervisory board may be imposed on the basis of the supervisor's knowledge of activities of subordinates and their resulting direct participation in such activities. Skehan, 465 F.3d at 108.

8

III. <u>Disposition of the First Amendment Claim</u>

At the outset, the court declines to grant summary judgment to Defendants based upon the argument that the Defendant Board of Education had no knowledge as to Plaintiff's political activities. Questions as to the knowledge and role that the Board of Education plays in the hiring and firing of teachers are matters that must await factual development at trial.

The court must also reject the argument that summary judgment is proper pursuant to <u>Garcetti</u>. Consideration of the law set forth above leads the court to conclude that numerous factual issues necessary to decide application of <u>Garcetti</u> preclude summary judgment. Among those issues are the nature of Plaintiff's duties, the particular statements constituting the speech at issue and the context in which those statements were made. It is unclear as to whether a single portrait of the President was displayed, whether that portrait was among other presidential portraits and when the portrait was displayed. Also at issue is whether Plaintiff spoke to her students about the President in general, the election in particular and what was said. Plaintiff also raises factual issues surrounding the knowledge of administrators of her speech and political activities outside of school. These and other factual issues also preclude the grant of summary judgment as to the nature of the school's pedagogical interest and Plaintiff's abilities as a teacher.

The court is aware that the issues of whether an employee speaks pursuant to his official duties and whether such speech falls into the category of protected speech present questions of law for the court. In the context of this summary judgment motion, however, the presence of factual issues precludes the court from making those legal determinations at this time. Such conclusions must await the trial of this matter. For the foregoing reasons, the motion for summary judgment as to the First Amendment claim is denied.

9

IV. The State Law Claim

Defendant moves for summary judgment dismissing Plaintiff's New York State Labor Law claim against the District on the ground that Plaintiff has failed to file the necessary notice of claim pursuant to Section 3818 of the New York State Education Law. Plaintiff concede that a timely notice of claim was not filed but argues that because she seeks vindication of a "public right," the filing of a notice of claim is unnecessary. The court disagrees.

Where, as here, a plaintiff seeks private relief for employment discrimination, the filing of a notice of claim is a condition precedent to suit. Chesney v. Valley Stream Union Free Sch. Dist., 2006 WL 2713934 *8 (E.D.N.Y. 2006); Cavanaugh v. Board of Educ. of Huntington Union Free Sch. Dist., 296 A.D.2d 369, 369, 745 N.Y.S.2d 433, 434 (2d Dep't. 2002). Plaintiff's failure to file a notice of claim requires dismissal of her state law claim. See Chesney, 2006 WL 2713934 at *9.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied in part and granted in part. Summary judgment is denied with respect to the federal cause of action pursuant to 42 U.S.C. §1983. Summary judgment is granted with respect to the state cause of action pursuant to Section 201-d of the New York State Labor Law. The Clerk of the Court is directed to terminate the motion.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 21, 2007